Welcome to the United States Court of Appeals to the Third Circuit. We have one case today. It's United States v. Miah. I may have that pronounced wrongly, but it is 22-2983. And we'll hear from Appellants' Counsel. Will you be reserving time? Yes, Your Honor. Two minutes for rebuttal. Okay, that'll be granted. I assume you got our letter, right? Yes, Your Honor. We did. Okay, good. We'll be tailoring our discussion today to those points. Thank you. Mr. Chief Justice, and may it please the Court. My name is Allie Hallmark, and I, along with my co-counsel, represent the Appellant, Hallid Miah, in this case. As I said, we'd like to reserve two minutes for rebuttal. That's granted. Your Honors, the communications underlying counts 1, 2, 3, and 5 of the indictment do not constitute threats to injure the person of another under 18 U.S.C. 875C. Now, we asked this Court to find in favor of Mr. Miah for several reasons described in detail in our briefing, but specifically three reasons the Court has asked us to address today. First, reading person in 875C to be a natural person is consistent with the plain language and structure of the statute, as well as the rules of lenity and constitutional avoidance. Second, to avoid over-criminalizing speech, 875C should be read as prohibiting only threats against particular persons or groups of persons. And third, the communications underlying counts 1, 2, 3, and 5 do not constitute threats standing on their own. So let me ask, in count one, there's three individuals named, right? Yes, Your Honor. Nick, Dave, and Mike. Are they not natural persons? Yes, Your Honor. Those individuals who are being named in the communications are natural persons. And so here, one of the issues that came up in discussion throughout the briefing in this case is whether or not the alleged threats were against the FBI as a whole, as an agency, or against certain individual agents. And so here we can see the FBI agents are identified as the bureau. The statement does say, and the whole bureau, yes. And so under 875C, the language for, let me explain it this way. Under 875C, it's apparent from the plain language and the structure of the statute that it must be limited to a natural person. And so the FBI agents you mentioned, those would be individual natural persons. And other cases, such as United States versus Stevens, address that in that an official could be identified and it still be referring to a natural person. As long as we're talking about that specific official who is identifiable. And what about the bureau? What if we struck out, if the indictment did not include Nick, Dave, and Mike, and just said the FBI, the deed will be done. Would that be sufficiently particularized? No, Your Honor. We don't believe that it would be. Not only because of the issue of the natural person requirement under 875C, but the whole bureau we believe is a very broad statement and is directed at generally kind of all of law enforcement. But how about the coordinates of the FBI headquarters? That's not specific enough? Well, Your Honor, it could be specific enough in a different context. And the reason that we don't believe it's specific enough here, it is important in the context of this case. And if I could explain a little bit more there. The context was an FBI investigation into Mr. Mia based on previous statements he had made on a YouTube comment. In fact, it was a very similar kind of statement that he made in the case here. He was talking to a former military officer on YouTube. He stated to that military medic, Hey, medic, you're going to be needed back here in the United States. Tick tock, tick tock. That's what he said in that tweet that triggered this investigation. So the FBI agents are clear from the record that he was not cooperative. And then over the next several months, he began posting offensive, harassing things about those statements online. He was talking to them quite a bit by name through various Twitter accounts. And so then we end up in December of 2020. And that's where we have the 30 tweets that are included in exhibit in that court requested last week. And among those are the tweets that are the subject of the indictment of these convictions. And so the government though charged Mr. Mia with threatening these FBI agents, not with threatening the whole bureau. And so this court doesn't actually have to decide whether particularization is required generally under 875 C because the government's theory of the case and its own decision for charging was that the threats were directed at these agents. And we can see that from the indictment all the way through that in the indictment. I mean, you know, the grand jury could have returned an indictment that said, you know, threatening FBI agents and then identify them either by name or by initials, but it doesn't on page a 51. Uh, it just says that he's charged with threats to injure FBI agents and then at least the five specific counts. So, so why can't just, you know, threats against FBI agents, some of whom are identifiable by the, by first name here. Um, but others, you know, may just work with the bureau. Why isn't that enough? Your honor, we don't believe that's enough because of the requirement, uh, that was explained in Virginia versus black by the Supreme court. And that is that we start out with the fact that eight 75 C as a statute that criminalizes speech has to be read with the first amendment, the commands of the first amendment in mind. And so that requires that it only be limited to prohibiting true threats. And a true threat is a serious expression of an intent to commit violence against a particular individual or group of individuals. And so in that case, it was important to the court that they were able to identify one. We extremely threatening and intimidating to people by its very nature, but we don't stop there to determine whether it is a true threat. So to see if it actually has no value and it's not protected under the first amendment, it must be more particular, particularized than that. And so as an example, a kind of silly example, perhaps a threat to kill me as does not have any value. However, a threat to kill all the lawyers, but a threat to kill all of the lawyers may have some value under the first amendment. And there is a distinction whether or not I am objectively in fear because I am a lawyer, the same way that African-Americans may very reasonably, objectively be in fear at seeing a cross burning. That doesn't mean that the speech has been unprotected. It's once it's more particular. Are you giving a first amendment argument now? We're arguing that under eight 75, I understand it's one of your arguments, but does this deal with particularization in terms of the motion to dismiss? Well, so under the motion to dismiss, the issue with the motion to dismiss was not that it was not identifying the agents, that the indictment didn't name the agents as the proper targets, but that the specific communications that were charged could not be threat standing alone. They had to be viewed in context. And that really goes more toward the third issue. But in terms of 875 C threats case is you have to look at the objective standard, what a reasonable recipient would understand under these circumstances. Isn't it fair to give this to the jury? I mean, the judge was not persuaded and said, we'll let the jury, we'll pass it to the jury to decide. It was up to them to decide. They heard the evidence and they ruled against. I mean, why is that wrong? And we agree that it's true that very rarely are these cases dismissed at the motion to dismiss stage. And so even if the court had correctly said, let's give it to the jury, the reality at the end of the day, based on the testimony of the agents in this case, they could not say with any certainty who they believed was being threatened. And so we believe that the, the evidence was legally insufficient to show threats against them. And specifically with those being divided up, don't you have to look at it in the context of what was charged here? Yes, your honor. And all the overtax he took to identify one of the agent's wives, put pictures of her on the internet, go by their homes, stake out the FBI building in Washington. That's part of the tapestry of this case, right? Certainly your honor it is. And we're not here to argue that Mr. Mia could not threaten the agents or that it's not. Given that context, your argument is that it doesn't satisfy either the objective or subjective threshold? As to counts one, two, three, and five. No. And I think count four is actually a useful contrast to explain the difference between these counts because count an issue here, right? It's not, but it is helpful for us to understand. And I, and I agree justice Restrepo that it is possible for Mr. Mia as an individual, who's very upset about this investigation, that's taking place to make a threat against the FBI. The problem is whenever you have a hammer, everything looks like a nail. And so in this case, we have five different counts for statements that the FBI claimed were all threats against them. When in fact, if they are read on their face and in the context of the surrounding communications, they were more generalized threats of violence. They were again, remember boys, I'm assuming boys in this context could be interpreted as the agents. Yes, your honor. The more eyes on me, the less eyes on the others, regardless of yellow tape will follow. That's not, uh, it's not threatening language. Your honor. We don't believe that those are, that that is sufficiently particularized, especially in the context of the previous tweets, because the way that these tweets, they came one at a time, day after day. And so first we have to look at them standing on their own because government chose to charge this not as one count, which was the case in the United States versus W. Tishley and in the United States versus con out of the second seventh circuit there, you are allowed to then look at all of the communications in context and look in hindsight and say, this looks like a threat. When I look back at it here, the government charged it so that every single one of these statements was its own individual threat. When under the objective standard, a person viewing, for example, count one, cannot consider any of the later information as part of its understanding about whether that one is a threat because it didn't exist at the time. And they consider the context in which it was made. Yes, they can consider the context up to that point. And so the trouble is that the government it's, it's clear from the agent's testimony that they believed that these statements started to kind of add up to threats. And if I can quote a few of the portions of the testimony here, where agent Hassan poor, when he was discussing the FBI coordinates, that's count three, he stated, putting this together with me as threatening statements on Twitter and that the hours approach approaching and putting that next to the coordinates of the FBI facility, it was very alarming for me that something imminent was about to happen. And I want to point out to that throughout their testimony, agent Hassan poor agent Foster and agent Edquist, they consistently said over and over, we thought these may be threats against us, against law enforcement, or against the community. And agent Foster went on to say that in fact, he was relieved by these threat, these statements that he perceived as threats, because he could finally get Mr. Mia off the street because he believed that he was a lone wolf or homegrown terrorist. But that is not what Mr. Mia is charged with threatening in this case. Are you challenging the judge's motion to dismiss before this testimony was taken? Are you challenging the jury's verdict, their factual findings with respect to this? So your honor, we're challenging legal sufficiency of the evidence in this case. And because the jury is at this point, the government is allowed to have reasonable inferences. We completely agree that the light is taken, the evidence is taken the light most favorable to the government. What are you challenging? We're challenging that the evidence was illegally insufficient to find that these statements were threats to injure these agents. The sufficiency argument you're making. It is one of our, it is one of our arguments, your honor. And as to issue one, we argued, yes, there was a motion to dismiss the indictment on those grounds, which was denied. And we continue to maintain that these statements, because they were separated out, they did not constitute threat standing alone, right? For example, count two is the zero hour is approaching. And we argue that that was not a threat standing alone, even though, but if we've asked. I'm interested in, in, in judge Restrepo's question. So on appeal, are you, are you challenging the motion to dismiss, or are we just looking at the, at the sufficiency? So in, in issue one, we are arguing that the and five. Okay. And so the looking at this evidence in the light, most favorable to the government. Yeah, I get that. Yes, your honor. Is this also looking at the motion to dismiss challenging the motion is miss head on your honor. In our briefing, we did challenge the motion to dismiss, but based on this, this court's request for discussion, we're focusing on the legal sufficiency. Yes. Okay. Yes. So we had challenged both your honor. And, but I will know that because of the quite a deferential nature of most, it's a high Hill. It is a high Hill, your honor, but this court has held in the United States versus Bates in 2012, that even though the government can use reasonable inferences, it cannot use speculative conclusions. And you don't have to take my word for it. The agents themselves consistently testified agent Edquist beginning at page eight 58. And his testimony goes on for quite a bit. And he discusses these tweets and yes, all of the agents say that they believe that this could be a threat against them. Of course they do because that's the government's theory, but they go on to say that they think that these are threats against them or the law enforcement or the public. And we believe that if you look at these statements in context, in the context, and specifically among all of the communications that Mr. Mia was making at that time, he's telling the agents after months of saying, I'm not a terrorist. Why are you following me? You guys are incompetent. You're bad at your investigation. You and your, you know, he thinks that they're racist. He makes a lot of these comments in December. He turns around and he says, maybe I am a terrorist and agent of Edquist admitted this in his testimony when he was asked on cross-examination. So do you think that at this point in December, he switched to saying, maybe I am a terrorist and agent Edquist said, yes, I do. I think that is what he's saying. This is comparable to the case in Fogle versus Collins in the ninth circuit where a man plastered on the side of his van. I am a terrorist. Pull me over. I dare you WOMD on board effing Jihad. He's pulled over arrested, ultimately not charged under the threat statute. And then when he brought a 1983 claim, the ninth circuit held that this speech was not sufficiently particularized to any individuals and was not a threat against anyone specifically. Defendant in the ninth circuit stake out the individuals in the case. They post pictures of their wives. No, your honor. And that, and while we agree that those are distinguishable facts, I think that the, the, the issue with this case and with the counts in this case is that it isn't that we disagree that Mr. Mia wouldn't couldn't possibly threaten the agents. In fact, count four, which States, uh, Cowboys, if you come back to my house, the hardwood will fall beneath your feet. It's sufficiently particularized against those agents, a conditional, a potentially conditional threat that if they come to his house, something could happen to them. But that doesn't mean that every communication that he makes is now a threat. And so when he says the deed will be done at a time of my choosing, he, he identifies no person that this deed will be done. The zero hour identifies no person. And then in count three, the FBI headquarters actually identifies a location that these agents do not work at. And there was no evidence that they had any relationship to. And the agents, when they were asked about it, agent Husson poor was specifically asked, well, what about the tweet right before the FBI headquarters? And that's on exhibit in, and it was a picture of the Capitol building. Your time is up. So why don't we get you on rebuttal? Apologies. Thank you. You're on. Thank you. Okay. I'm here for Mr. Smith. Thank you, chief judge cigars and may please the court. Jeffrey Smith for the United States. The district court's judgment in this case should be affirmed. And that includes his decision, the court's decision to deny the motion to dismiss. This court, as you indicated, submitted a letter to the parties asking us to concentrate on three different issues, which I would like to do. The first issue the court asked was whether the term person in threat to injure the person of another section eight 75 C means a natural person. The answer to that is yes. This court set out the standard in its post remand opinion in aloneness and explained that in a section eight 75 C prosecution, the jury is required to consider the context and circumstances in which communication was made to determine whether a reasonable person would consider the communication to be a serious expression of an intent to inflict bodily injury on an individual. The second issue that you asked us to focus on was whether particularization is required for a conviction under section eight 75 C, and whether each challenge communication constitutes a particularized threat. I'd like to take the second part first and say the answer is yes. The indictment, as I believe members of this court have already observed the indictment charged threats against FBI agents, the district court in addressing the motion to dismiss analyzed it under that framework. The district court found that counts two and five, a reasonable jury could find were threats to the specific FBI agents who are investigating Mia. And that count three, a reasonable jury could find was a, a threat to the FBI agents working at FBI headquarters. Let me stop you for a second on count to the zero hours approaching. Yes. Why is that a threat against the specific FBI agents who are investigating Mia as opposed to a threat against the other communities that he had at harbors bias toward as evidenced in the record? So in, in isolation, this is ambiguous in that it, it does seem to be, it could be an attack against the agents or it could be attacking someone else. But if you look at all of the context in this case, as the precedent requires and that includes me as specific animosity towards law enforcement, his fascination with violence, the research that he had done specific to special agent Edquist and his wife specific to supervisory agent Foster. The fact that he had sent the, the photographs of essay Edquist and his wife to his, to an associate saying that's him, that's, that's his wife. It's all public information, shield number, license plate number, make, model, and year of his car and his age, he's a cruiser. Also his location of residence is public. The fact that he had conducted reconnaissance on the Edquist's residence and the Pittsburgh field office where essay Edquist and other victims in this case worked all is context that the jury could take into account and conclude that in fact Mia is referring to these people that he has been researching and conducting. And your brief though, and in the district court's opinion, resolving the motion to dismiss that there were references to context in, in, in both of those sources, the district court and your office said the context includes the comment about the plane hitting the south tower. And which is count one, right? So it was, was that erroneous or was that proper to consider the content of count one in, in addressing whether count two threatened. So I think it's entirely proper. I think, so I, I'm just trying to look back at count one both, both the, there are two tweets that make up count one, both the, the, the, the first tweet, which specifically mentions the, the agents and the second tweet, which talks about the south tower, as you mentioned. I think it is correct to consider those. I don't think it was necessary to the judgment here, but I think it's correct because the precedent requires consideration of context and context is all relevant information available at the time to the, to, to the objective observer, to the victim at the time of the threat that we're talking about. And there's no basis that we're aware of that charged conduct should somehow be exempt from the context analysis. That seems like a really slippery slope though. I mean, so if, if someone says something terribly threatening on day one, and then says, says other kinds of vague things on days, two, three, four, and five, then you can always consider what they said at, at, at, at on day one and charge five different counts. I mean, yes, I think that you can. A couple of things I would say, like if you, one might imagine a scenario where a person says, I'm going to murder you to a victim. I'm going to murder you in 10 days. And then two days later, eight days, and then three days later, six days, and you know, each one of those threats has an impact on the victim. It has the same kind of harm that it would be if he said, I'm going to kill you in six days, because it's clear that the tweets are referring in the context. It's clear that when he says six days, four days, two days, he's counting down to that original 10 day, but certainly the 10 day tweet is itself a threat as are each of the subsequent ones. And in terms of case law, I would point to United States versus Stevens, which is the 10th circuit case that this court discussed favorably in that case, there were 10 counts. It's a, it's a case that's broadly similar to this. It was threats against a police department where they didn't in some of the threats they named individual officers. And some of the threats, the defendant did not just named the department generally, or officers generally at the Tulsa police department. And the court in that case, analyzed all 10 of the threats and found that each of them that the district court had correctly sent each of them to the jury, there was ultimately no jury because there was a plea, but that the court had correctly decided not to dismiss any of those 10 counts. And I also know that there were five counts in aloneness. Yeah. I think the issue though, in, I mean, I understand your point about the, the multiple counts in Stevens, but you know, in, in Stevens, we also have counts that, you know, I mean, I don't have the opinion with me, but according to Davidovsky, you know, they were targeting messages of deadly action at Tulsa police department officers, generally, right. Not specific officers, but like, you know, I mean, if it sounds like those were clearly threats on their own, as opposed to the zero hour is approaching, which one might say is, is ominous and threatening, but not directed toward the Tulsa police department or the equivalent here at the FBI. Well, so the number count eight in Stevens was spill your guts to the they don't ask or your kids will start dying. This ends now. Now, again, that's ominous and threatening. If you just had that, you would have no idea who he's talking to though. And it's not clear whether anyone would consider that to be threatening. I mean, who's supposed to talk to the feds? What are they supposed to say? But if you read the seven threats before that, you recognize that he's talking about police misconduct, alleged police misconduct, and he's talking to police officers specifically, and that's whose children are being threatened. So I don't think this case is, I mean, no case is going to be exactly the same on the facts, but I don't think this case is so different from Stevens. We talked about just for a second, how this is charged. You got five different counts. Can an argument be made? I mean, why shouldn't this be all one threat? You got five, the five days in a row saying something that adds a little something. Why isn't this one as opposed to five? Well, I think the answer is in the statutory text. It says whoever transmits in interstate foreign commerce and then, you know, goes on. I don't need to, I don't think I need to read the whole thing, but it's whoever transmits. So the crime is the transmission of the threatening communication. So the unit of prosecution can be each transmission, assuming that that transmission is itself a coherent threat in the overall context, which includes, would include prior threats as well as prior uncharged or unchargeable conduct. What about a precedent that says that each count of an indictment must stand alone? Well, I think that that's correct, but I think that you can consider the entire, I mean, I guess, yeah. So I guess the question is, I'm trying to think of that. So in the indictment, I'm trying to think back to the indictment, but in the indictment, the entire So you're, you're arguing that, so I guess you're suggesting that there might be a pleading error that the government could have fixed by saying we reincorporate, because the counts one through five are recorded in the same paragraph. They're like, these are the following threats. And then there's a chart that has them. So I'm not sure. What I'm giving you, I guess, is you have seven pages of the indictment, about 18 paragraphs of context, like all, you know, how the investigation started and some, some tweets and other social media messages that are all, you know, involvement with weapons, things like that. All of that is context that I, that is certainly able to be considered. And then you say, you know, count one, you know, looking at the second plane hit the tower and so on. That, that with it, with the preceding 18 paragraphs can be, has to be considered separately. It sounds, seems under our precedent from count two, that tweet with the preceding 18 paragraphs, right? Those, those must stand alone as opposed to incorporating count one. Otherwise, why isn't, you know, it seems like that we're just, just using the same, you know, one, one crime to, to create several more. Well, again, I, I don't, I'm not exactly familiar with the precedence. It's not an issue that the defendant had raised specifically. I don't know. I mean, normally indictments say things like we reallege all counts, and I'm not sure why it should make a difference that they didn't say that in the chart itself, like we reallege each time. I mean, it's clear that the defendant was put on notice of it, but I also would point out that I think that even without considering count one, I think that the other context in this case, whether you're looking at the indictment, as I think you should be on this argument, or you're looking at the evidence, which the defendant talked about in, in our opening argument, the, the evidence shows that for months and months, the defendant was focusing on these agents specifically and on the FBI specifically, and had animosity towards law enforcement specifically. So, you know, so we would argue even if it were error, and we don't think it is, that counts two, three, and five could be, sorry, could be, a jury could find that they were focused on the investigating agent, or count three, rather, on the FBI employees at the FBI headquarters, and counts two and five on the agents. And I would note count three specific, obviously specific to the FBI headquarters, and count four, the remember boys, the more eyes on me seems to clearly indicate that it's the people investigating him. Your adversary brought up particularization as an issue here. How should we view, or is there a test that we can apply to, to gauge whether there's sufficient particularity? So, I don't think that's an issue in this case, because the that's what, that's the rubric the district court used. However, to answer your question more abstractly, I don't think there is a specific particularization rule. In a loan, as this court set forth the two, two-part framework, the subjective test, and the objective test. Now, particularization is one of the factors that can be relevant to the objective test, that is, a more particular statement might be one that an objective person would be more likely to think is a serious threat. And I would say, I'd just like to point out that our position here is in line with the Fourth Circuit's position from United States versus Armel, 585 F3rd 182 at page 185. That case deals with section 115, but we believe the same analysis applies to 875 C. And there's also a, I think, helpful analysis in United States versus Perez, 43 F4, 437 at 443. And Armel is another case that's, that's fairly similar to this. In that case, the defendant was giving threats to a particular FBI field office without identifying specific employees or our Sorry, let me, I found what I was looking for when I said each count of an indictment must stand on its own. It's, it's an opinion from our court, United States versus Stevenson from 2016. It says each count of an indictment is regarded as if it was a separate indictment. It must stand on its own and cannot depend on its validity or its validity on the allegations of any other count, not specifically incorporated. And you did mention a practice of incorporation and other and other matters. I don't see any incorporation in these particular counts. No, I think that's, I think that's fair that it's a chart. So I don't know if you have it in front of you, but it's, it's, it says, you know, counts one through five, the jury, the grand jury finds that the following threats were made against FBI agents. And then it's a chart. I'm not You know, to the extent that the district court should have required us to, you know, break out the chart and say, and, and put a line in between each one, then I would argue perhaps that that's harmless error. But again, I think that even without using the prior charges, I think the overall context at issue in this case is sufficient for, for that, for a jury to find from the evidence that the, the government that, sorry, that the defendant was objectively is threatening FBI agents, these particular FBI agents in four of the five counts and the FBI agents at FBI headquarters in one count. If there's sorry, if there's no further questions, thank you. We would ask that the judgment be affirmed. Thank you. Thank you. And we'll hear rebuttal. Mars, I have two points on rebuttal, one more specific and one that kind of gets to the, one of the bigger picture issues here. And the first is a council was asked about whether particularization would be required generally, or would be required here in this case. And we would say that if we're going to use the, the example that he gave that the FBI agents in count three are the FBI agents in headquarters. I first challenged, I do not believe looking at the closing arguments of the government, the opening arguments of the government, the arguments throughout the case, when they said these agents, they said these agents that you met, those were the victims of these threats. That was the government's theory. And if we extend that theory to the FBI agents at the headquarters, it would create major evidentiary problems because under the objective standard, we look at what the reasonable recipient would believe with the information that they had at that time. And there is no evidence that anyone at the FBI headquarters or anywhere outside of these agents would have had any of this context to believe that the statement, the coordinates would mean a threat against that headquarters because they're not involved in the investigation. Their families haven't ever been mentioned. And so everybody else at headquarters, exactly everybody else at headquarters. So under count three, you simply have an evidentiary problem because so much of this evidence. Is there anything in the record that Maya knew these guys weren't actually out of headquarters? Uh, those agents, they do discuss that they office in Pittsburgh. They stated quite a few times throughout their testimony. I don't have the citations in front of me, your honor, but they say it several times. I mean, did for all the defendant knew that was their office. So your buddy is coming up to give you a, there is no evidence that the, uh, that the defendant believed that. Their office in Pittsburgh. Thank you. So the only evidence that, that we do have on that is that Mr. Mia did make a complaint to the FBI Pittsburgh office, but we know he never had any interaction with the other, uh, office. Uh, but more broadly, and I am, I am out of time and I'm going to, to, to close justice Sotomayor and justice for just in their concurrence and counter members as Colorado discussed the problem of over criminalization of speech, which is critical in the internet era, because the burdens of over criminalization are going to fall hardest on certain groups whose views or ideology at the fringes of society are more likely to strike a reasonable person as threatening. And so we have to have these types of protections in place, whether we're protecting members of the KKK or protecting individuals who espouse terrorist ideology and beliefs. As for these reasons, we ask the court to hold in favor of Mr. Mia. Thank you. We thank council for their excellent briefing and oral argument. In this case, we'll ask the clerk to adjourn.